From Rutherford.
The many cases occurring in our courts under the act of 1777, ch. 1, compelled the judges at an early period to adopt a construction which excludes the evidence offered in this case. In Reynolds v. Flinn,2 N.C. 106, the Court said: "Here the plaintiff has a State grant, and it would be of the most dangerous consequence to avoid it by parol testimony. It is true that the act of 1777, ch. 1, sec. 9, declares, `that every right, title, claim, etc., obtained in fraud, elusion, or evasion of the directions of that act shall be deemed void'; but the meaning is that it shall be void as to the State, who may proceed to avoid it by scire facias;
not that it shall be avoided upon evidence in ejectment by an individual citizen." In Seekright v. Bogan, 2 N.C. 177, it was insisted for the defendant that he was entitled to the land, because he made the first entry; but the Court said the rule was, that the first grant gave the best title, not the first entry. The same doctrine was held by the Court inAndrews v. Mulford, 2 N.C. 311, 318. Many other cases might be adduced to show that the construction of this act of Assembly has uniformly excluded evidence of this kind in an action of ejectment, and compelled persons who have been injured by fraudulent grants to resort to a court of equity for relief. Many cases might also be adduced to show that where a statute declares an act void, the construction has been that it is only voidable: as Smith v. Warren, Roll., 159, where the Court held that, although the statute of additions directs that *Page 270 
if any person be outlawed without addition the outlawry shall be void and of none effect, yet it shall not be void without writ of error. The construction of the act of 1777 has been so long fixed that the Court cannot think at this day of altering it; although if this case was entirely new, and brought before (403) the Court now for the first time for a decision, a different construction might possibly be given to the act. Rules of property which have become known and fixed, and which have been long acted under, should never be broken in upon but for reasons of the most urgent necessity, and then only by the Legislature. In many instances it is of much more consequence that the rule should be certain and notorious than that it should be conformable to strict notions of justice, especially in a case like the present; for the observance of this rule does not deprive the plaintiff of all remedy; it only compels him to seek it in a court of equity, or institute proceedings under the act of 1798, ch. 7, to vacate the grant, which has been obtained in fraud, elusion or evasion of the act of 1777. The practice of the courts in refusing evidence in an action of ejectment to vacate a grant was well known to the Legislature of 1798, and the passing of the act of 1798, ch. 7, and therein giving a remedy at common law, must be considered as a legislative sanction of this practice. This act, instead of directing grants improperly obtained to be vacated by parol evidence in an action of ejectment, has pointed out a much more safe and effectual method of vacating grants, by declaring that "when any person or persons, claiming title to lands in any of the counties of this State, under a grant or patent from the King of Great Britain, any of the lords proprietors of North Carolina, or from the State of North Carolina, shall consider himself or themselves aggrieved by any grant or patent issued or made since 4 July, 1776, to any other person against law, or obtained by false suggestions, surprise or fraud, such person so aggrieved may file his petition in the Superior Court of Law for the district in which such land may lie, together with an authenticated copy of said grant or patent, which petition shall briefly state the grounds whereon such patent should be repealed and vacated; and thereupon a writ of scire facias shall issue to the grantee, patentee or person claiming under (404) such grant or patent, requiring him to show cause why such grant or patent should not be repealed and vacated." And the act authorizes the court to give judgment that such grant or patent be repealed, vacated and made void.
It has been contended that there has been a departure from the rule early established in the cases of University v. Sawyer, *Page 271 1 N.C. 159, and Strother v. Cathey, ante, 162. There is certainly a wide difference between those cases and that now under consideration. In the first, the grant was declared void, not upon the ground that the entry was irregular and that some of the requisitions of the act of 1777 had been omitted; but because that act only authorized the entry-taker to receive entries for vacant and unappropriated land; that the Secretary and Governor had only power to issue grants for land of that description; and as the land for which the defendant had obtained a grant had been entered and granted before the entry of the defendant Sawyer was made, his grant was deemed to be ipsofacto void. So in the case of Strother v. Cathey, at the time the land claimed by the defendant was entered, the State had no title to it; it had been previously granted to the Cherokee Indians, and was the property of that tribe solely and exclusively; and every entry-taker was forbidden to receive entries for it. The grant to the defendant was therefore declared void; the State had no title or interest in the land. But the present case is quite different: the land was the property of the State; it was vacant and unappropriated; the officers of State were clothed with power to issue the grant to the defendant, and the only defect complained of is the mode of obtaining the grant. This defect must be remedied, and the injury thereby produced redressed by an application to a court of equity, or by a petition filed in a court of law, under the act of 1798. The evidence was properly rejected, and the rule for a new trial (405) must be discharged.*
* NOTE BY REPORTER. — The principle settled in University v.Sawyer, 1 N.C. 159, was this, that grants of escheated or confiscated lands by officers appointed to convey vacant lands are void. That case was decided in Edenton Superior Court, at April Term, 1799. The land had been originally granted to a person who left the State before 1771, since which time he had not been heard of. In 1780 part of the same tract of land was granted to another person, whose title had come to the defendant, and in 1788 another part of the same tract was granted to another person, whose title had likewise come to the defendant. It was argued for the defendant that the State, at the time of these respective grants, was entitled to the lands, either by escheat or confiscation; and, having granted them to persons under whom the defendant claims, could not afterwards make a valid grant of the same lands to the trustees of the University. But supposing the grants under which the defendant claimed to be voidable, as having issued by a mistake occasioned by the misrepresentation of the grantees, yet they could not be avoided on a trial in ejectment.